ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* JACKSON.

Opinion delivered November 14, 1910.

1. APPEAL AND ERROR—HARMLESS ERROR.—While it is error to give an instruction inapplicable to the evidence, such error will not be ground for reversal if it was harmless. (Page 472.)

2. SAME—HARMLESS ERROR.—Where a railroad company owed a duty to plaintiff to use ordinary care to avoid injuring him, and failed to discharge such duty, whereby plaintiff was injured, an instruction relative to such duty was not prejudicial merely because the reason assigned why defendant owed the duty was erroneous. (Page 473.)

3. RAILROADS—DUTY TO PERSONS NEAR TRACK.—It is the duty of a railroad company to use ordinary care to avoid injuring persons who may be rightfully near its track; and if in such case a person is injured by the operation of its train, the sole question is whether or not it was guilty of any act of negligence which caused the injury. (Page 473.)

4. SAME—INJURY TO ONE TRESPASSING UPON STRANGER'S PREMISES.—A railroad company is not excused from the duty to use ordinary care to avoid injuring a person who may rightfully be near its tracks because such person is a trespasser upon the property of an adjacent landowner. (Page 474.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans, Judge;* affirmed.

*Lovick P. Miles,* for appellant.

1. There was no legal obligation upon appellant to exercise care to make the use of the cotton warehouse platform safe for appellee. This case does not fall within the doctrine announced in *Brinkley Car Co.* v. *Cooper,* 60 Ark. 545, and 70 Ark. 331-5, and the court's instruction numbered 1 is erroneous. 48 Ark. 491-3, and cases cited; 77 Ark. 561; 89 Ark. 122; 69 N. H. 649; 57 Ark. 461; 101 Pa. 258; 7 Texas Civ. App. 65; 26 S. W. 474; 90 Ark. 278.

2.  There is no evidence on which to base the instruction. 87 Ark. 471 ; 77 Ark. 109 ; *Id.* 261.

*C. A. Starbird,* for appellee.

1.  The presumption is that appellee was rightfully on the platform, and appellant would not be permitted to question his right to be there without first showing ownership or possession in itself. But, even if he were a trespasser, appellant would nevertheless, under the circumstances of this case, be liable. Its negligence consists in so using its property as to tear down the platform and thereby injuring appellee and, being guilty of negligence in tearing down the platform, it is liable for the whole damage. Appellant itself was a trespasser, and can not exempt itself from damage for its fault, negligence and trespass, by charging appellee with being a trespasser. 29 Cyc. 459, 495.

2.  Appellee's case was made when he proved the injury, and that it was done or caused by the operation of appellant's train. The burden was then upon it to avoid liability by proving unavoidable accident or contributory negligence. 82 Ark. 443-4; 87 Ark. 581 ; *Id.* 308; 83 Ark. 217 ; 81 Ark. 275 ; 73 Ark. 553 ; 65 Ark. 235. And whether an injured person is or is not a trespasser under circumstances of this case is a question for the jury. 52 Ark. 368; 63 Ark. 636; 70 Ark. 481 ; 74 Ark. 610; 126 S. W. 850. Trespass on appellant's road or right-of-way would have been contributory negligence, but trespass on the land of a third party would not have been such negligence as to appellant, and is not a defense, even if proved, of which it could take advantage.

FRAUENTHAL, J. This was an action instituted by Bruce Jackson, a minor, by his next friend, to recover damages for personal injuries which it was alleged he sustained by reason of the negligence of appellant. The plaintiff was standing upon a platform next to the right-of-way upon which appellant operated its trains, and it was alleged that appellant carelessly and negligently ran one of its cars against the platform, and broke the same down, and thereby injured the plaintiff. The platform was attached to the front part of a cotton warehouse owned by the "Farmers' Union," and it was built by and wholly located on land owned by the "Farmers' Union." It was situated in the town of Mulberry, and from one to three feet from ap-

pellant's right-of-way. At this place the appellant had built a switch or spur track which extended from its main or another switch track past the warehouse to a creek at which ties were loaded on cars. The testimony on the part of the plaintiff tended to prove that by the side of this "tie spur" there was a beaten pathway along which the public was accustomed to travel. On this occasion the plaintiff travelled along this pathway to the platform, and at the time was on his way to a house upon the creek where he had left his overalls the day before. The platform was about ten feet long and about five feet wide, and was situated at the front of the warehouse for the purpose of loading cotton therefrom on to the cars, but it was not located on any part of the right-of-way, or property of appellant. It was located along this pathway upon which the plaintiff was traveling, and at the time he reached the platform the appellant was engaged in moving cars upon the "tie spur." It was necessary for the plaintiff, in order to go to the house where his overalls were, to cross over the "tie spur" at a point below the warehouse in the pathway which crossed the "tie spur" at that place, and he therefore waited at the warehouse for the train to clear this track. In order to secure a place where he would be safe from any danger from the cars while the train was thus being moved upon this spur track, the plaintiff stepped upon the platform, and leaned up next to and against the warehouse. In the train there were some box cars and also some cars known as "dump" or "cinder" cars. These "dump" or "cinder" cars were constructed with doors upon the sides which were fastened at the top and swung out from the bottom. The doors were supplied with fastenings at the bottom so that they could be kept securely closed. On this occasion the "dump" cars were empty, and the doors were negligently left unfastened, so that they swung out from the sides of the car for some considerable space as the train moved along the rough and un-evenly-built "tie spur." As the train passed this platform upon which the plaintiff was standing, the swinging door of one of these "dump" cars struck the platform, and knocked it down with great force, and crushed the plaintiff between the warehouse and the platform, thereby severely injuring him.

The appellant requested the court to give the following instructions to the jury, which were refused:

".2.  Defendant owed plaintiff no duty except to not wilfully, wantonly or recklessly injure him after the employees actually saw him on the platform and actually realized he was likely to be injured, and before plaintiff can recover he must prove by a preponderance of the evidence that defendant saw plaintiff on the platform, knew that he was likely to be injured, and all in time to have saved him by the exercise of ordinary care, and thereafter failed to exercise such care, and such failure caused his injury."

"3.  The evidence in this case is insufficient to sustain a finding that the handling of the car with a swinging door at the time and place was such negligence as would entitle plaintiff to recover on account thereof, and you will so find."

Thereupon the court among other instructions gave the following:

"1.  If the cotton platform attached to the union warehouse was erected and maintained to load cotton into defendant's cars for shipment, then defendant was bound by law to exercise ordinary care not to injure any one who might reasonably be expected to be on the platform in connection with the business of loading cotton into the cars. And if such a platform is a place that may naturally and reasonably be expected to attract children of plaintiff's age and development to be upon it for play or for watching the movement of cars, or for any other childish or lawful purpose, then defendant owed such children so there, or that might reasonably be expected to be there, the duty of using ordinary care in the handling of its cars and trains so as not to strike the platform and wound or injure such children so upon it."

The jury returned a verdict in favor of the plaintiff, and from the judgment entered thereon the defendant has prosecuted this appeal.

It is urged by counsel for appellant that the court erred in giving the above instruction number 1, because it is not applicable to the state of case made by the evidence, and is not supported by any testimony adduced upon the trial of the case. And to this extent we think that this contention is well founded. The injury occurred in the month of July, and there was no testimony introduced tending to prove that any cotton was being

loaded or unloaded at this warehouse or platform at that time or season, from which it could be inferred that the appellant or its employees might reasonably have expected persons to be on the platform engaged in that business or work. Nor do we think that the testimony was sufficient to show that the doctrine evolved in what is known as the "turntable cases" was applicable to this case. The principle involved in those cases is that where the owner maintains upon his own premises an object of an uncommon character, which is dangerous in its nature, and to which he might reasonably expect that children too young to appreciate the danger would be allured and attracted, he is liable for the consequent injury to them therefrom. But in this case the platform was not on appellant's premises, and it therefore was not incumbent on it to guard or protect children therefrom, even if the platform was enticing or attractive to them; nor was it of such a nature or so located that it can be said that appellant might reasonably have expected that children would be allured and attracted to it. The testimony of the plaintiff is that he went to the platform, not from curiosity, but to seek a place of safety. But it does not follow, because this instruction was erroneous, that the giving of it was prejudicial. It is true that actionable negligence is based upon the failure to discharge a duty to the person injured, and that the court by this instruction predicated that duty upon a state of facts not disclosed by any testimony in the case. But if the appellant under the facts and circumstances of this case owed to the plaintiff a duty which it failed to discharge, and thereby he was injured, the instruction would not be prejudicial, although the reason given by the court why the appellant owed that duty to plaintiff was erroneous.

Thus, it is the duty of a railroad company to use ordinary care to avoid injuring persons who may be near its tracks and who are rightfully at such place; and if in such case a person is injured by the operation of its train, the sole question is whether or not the railroad company was guilty of any act of negligence in the operation of the train which caused the injury. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Neely*, 63 Ark. 636, the railway company was operating its freight train along a street in the town of Warren, and while the train

was passing Neely in the street where he had a right to be a car door fell from its place in the car and injured him. In that case the court said: "The railroad company owed him the duty to employ reasonable care to avoid injuring him." So in the case of *St. Louis & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246, where a traveler at a public crossing was injured by a door projecting from a moving train, it was held that, he being rightfully at such place, the railroad company owed to him the duty to use ordinary care to avoid injuring him. Shearman & Redfield on Negligence (3 ed.), 477; 33 Cyc. 1146; *Doyle* v. *Chicago, St. Paul & K. C. Ry. Co.,* 4 L. R. A. 420. And so this duty, the violation of which constitutes actionable negligence, may arise in various ways. It is a maxim of law that one owes the duty to others to so use and manage his own property as not to injure another. That is an obligation resting upon a corporation, just as it does upon a natural person. *St. Louis, I. M. & S. Ry. Co.* v. *Hecht,* 38 Ark. 357; *Railway Co.* v. *Lewis,* 60 Ark. 409; 2 Shearman & Redfield, Neg., §§ 688a-701a. As is said by Mr. Cooley in his work on Torts (page 630): "For negligence in a legal sense is no more nor less than this, the failure to observe for the protection of the interest of another that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." The nature and extent of the duty owed to the person injured determines the degree of the care that should be exercised for his safety, and not the reason for such duty. If the appellant owed to the plaintiff a duty which it failed to discharge, and thereby he was injured, it would still be liable for such injury, although a correct reason may not have been given why it owed him such duty.

But it is urged by counsel for appellant that plaintiff was not rightfully on the platform, and was therefore a trespasser; and that on this account the railroad company only owed to him the duty not to wilfully, wantonly or recklessly injure him after the appellant's employees discovered his perilous situation, and knew of his danger. It has been uniformly held that where a person is upon the right-of-way or property of a railroad company at a place other than at a public crossing, without authority,

permission or license of the company, he is a trespasser, and that to such trespasser the railroad company owes only the duty to avoid injuring him after the perilous situation of such person has been discovered. 2 Shearman & Redfield, Neg., § 705; 2 Cooley on Torts, p. 1268; 2 Thompson on Neg., 2103. But in this case the plaintiff was not a trespasser upon the right-of-way or property of appellant. The platform upon which he was standing was wholly off the land of the appellant, and was solely the property of an adjoining landowner. It is true that the testimony does not show that the plaintiff had the authority or permission of the owner of the platform to be thereon, and as to such owner he may have been a trespasser. The controlling question then is whether the appellant under these circumstances only owed the plaintiff the duty that it owed to a trespasser upon its own property, or whether it owed to him the duty to exercise the care required for the protection of the owner of the abutting land or 'of one rightfully thereon. Every abutting landowner has the right to insist that the railroad company shall be under the duty and obligation to use ordinary care in the operation of its trains so that his person or property may not be injured thereby. "This duty is due, not only to the abutting landowner, but to every person along or who may pass along, but not on, the right-of-way." *West Virginia C. & P. Ry. Co.* v. *Fuller,* 61 L. R. A. 574. A person must exercise ordinary care in the use of his own premises and the instrumentalities operated thereon so as not to injure the property or person on abutting premises, and for a failure to use such care he is liable for a consequent injury to such adjoining owner. *Defiance Water Co.* v. *Olinger,* 32 L. R. A. 736. And the same rule applies where the person injured upon the abutting premises is there only by permission of the owner or without such permission. In such case he is not a trespasser upon the premises of the owner by whose negligence the injury is caused; nor does it concern such negligent party or relieve him from consequent liability that he is a trespasser upon the premises of an adjoining owner.

In the case of *Wilson* v. *American Bridge Co.,* 77 N. Y. Supp. 820, the plaintiff was injured by hot water and steam discharged from a pipe on defendant's premises. The defendant

was a manufacturing corporation, and its plant was contiguous to the premises of a railroad company, where plaintiff was at the time the steam and water were expelled on him. In that case the court said: "I do not consider it as very significant in the solution of this case whether or not the plaintiff was a trespasser upon the lands of the railroad company. The use of the pathway was extensive, and it was no concern of the defendant whether this use was rightful or against the will of the owner. That question might be cogent if the railroad company were the party, but it may not be urged to relieve the defendant of liability."

In the case of *Wittleder* v. *Illuminating Co.*, 62 N. Y. Supp. 297, the plaintiff was standing upon a platform located on the property of a railroad company, and was injured by coming in contact with an electric wire belonging to the defendant. In that case the court said: "The defendant's exceptions raise a question as to the contributory negligence of the boy in that he was not lawfully on the platform, and therefore was a trespasser. We do not think this is a question which can be raised by the defendant, as not it but the railroad company was the owner of the platform. It may be conceded that the boy was a trespasser as against the railroad company, and that there could have been no recovery against it. * * * For all that appears, the defendant was just as much a trespasser on the railroad structure as according to its claim the boy was. At any rate, the defendant is not in a position to defeat the action on the ground referred to."

And so in the case at bar it does not concern the appellant whether the plaintiff was on the platform with or without the permission of the owner; he was not a trespasser upon the property of appellant. It therefore owed to plaintiff, under the facts and circumstances of this case, the duty to exercise ordinary care in the operation of its train to avoid injuring him; and if it failed to discharge that duty, it was guilty of negligence and liable for the consequent injury. Under the facts and circumstances of this case, we think that it was a question for the jury to determine whether or not the appellant was negligent in the operation of its train and cars which caused the injury. Upon this question of negligence the court in other instructions

given by it properly instructed the jury. The court did not err, therefore, in refusing the above instructions requested by appellant, nor did it commit an error prejudicial to its rights by giving the above instruction number 1 upon its own motion. Counsel for appellant concede that there was sufficient testimony to sustain the amount of the verdict returned by the jury. Upon an examination of the whole case, we do not find that any prejudicial error was committed in the trial, and the judgment is accordingly affirmed.